# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ADALE WILKINS,                          :

     Plaintiff,                     :

                        Case No. 3:13cv00049

  vs.                                 :

                        District Judge Thomas M. Rose

CAROLYN W. COLVIN,                      :    Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                :

     Defendant.                     :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    <u>Introduction</u>

Plaintiff Adale Wilkins brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Plaintiff protectively filed her SSI and DIB applications in July 2009, asserting that she has been under a "disability" since April 30, 2008.[2]  (*PageID##* 214-20, 221-23).  Plaintiff claims to be disabled due to permanent nerve damage.  (*See PageID#* 241).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] During the administrative hearing, Plaintiff amended her onset date of disability to January 18, 2008. (*PageID##* 100-01).

1

After various administrative proceedings, Administrative Law Judge (ALJ) Carol K. Bowen denied Plaintiff's applications based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 69-84). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. This Court has jurisdiction to review the administrative denial of her applications. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #15), Plaintiff's Reply (Doc. # 16), the administrative record (Doc. #6), and the record as a whole.

## II.    Background

### A.    Plaintiff's Vocational Profile and Testimony

Plaintiff was 35 years old on her alleged disability onset date, which defined her as a "younger individual" for purposes of resolving her DIB and SSI claims. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c)[3]; (*PageID##* 82, 236). Plaintiff attended school through the 10th grade and has a "limited" education. *See* 20 C.F.R. § 404.1564(b)(3); (*PageID##* 82, 247). She has past relevant employment as a factory assembler, fast food worker, housekeeper, laboratory technician, and nursing assistant. (*PageID#* 242).

---

[3]The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

Plaintiff testified that she has a 5 year old son and custody of her 12 year old nephew. (*PageID#* 102). Plaintiff is able to use public transportation and took a bus to the hearing. (*PageID#* 107). She has not worked since January 2008. She attempted to get a job a few weeks after her surgery because she was "having hard times." (*PageID#* 103). Plaintiff testified she is unable to work due to back pain, severe depression, and irritability. (*PageID#* 104).

Plaintiff sees her family physician every four weeks and was on a waiting list to see a new pain specialist. (*PageID##* 104-05). She sees her counselor every two weeks and the psychiatrist every two months. (*PageID#* 105). Plaintiff listed her medications and testified that she is taking them as prescribed. (*Id.*). She noted no side effects from her medications, but also stated they did not provide her with complete relief from her symptoms. (*PageID#* 106). Besides her medications, she has not been in physical therapy or done anything else for pain relief. (*Id.*).

As to her daily routine, Plaintiff normally wakes up "[s]omewhere between 8:30, 9:00." She takes care of her personal hygiene, then cleans and bathes her 5 year old son. (*PageID#* 106). She performs daily chores (such as washing dishes), but noted she has to take a break because the entire left side of her body "just throbs." (*PageID#* 107). She stated that she cooks but it takes her a long time. (*PageID#* 108). Her sister or cousin go grocery shopping for her. (*Id.*). During the day she watches television. (*PageID#* 109). Her brother walks her son to school. (*PageID#* 110). She has a friend that helps her

3

clean. (*Id.*).  Her nephew's principal takes him to practice and sporting events.  (*PageID#* 111).

Plaintiff estimated that she could walk from her house to the local bus stop. (*PageID#* 107).  She could stand in one place for "[p]robably about 10 minutes." (*PageID#* 112).  She estimated she could sit for about 10 or 15 minutes.  She stated that sitting at the hearing was "breaking me all the way down."  (*PageID#* 113).  She does not carry bags.  (*Id.*).  Plaintiff testified she has no problem using her arms or hands.  (*Id.*).

### B.  <u>Vocational Expert Testimony</u>

A Vocational Expert (VE) also testified at the administrative hearing.  (*PageID##* 118-21).  The VE described Plaintiff's past work as a housekeeper (classified at the heavy, unskilled level); laundry worker (classified at the medium, unskilled level); medical lab technician (classified at the light, skilled level); and nurse's aide (classified at the medium, semiskilled level).  (*PageID#* 119).  The VE was asked a hypothetical question based on an individual who has the residual functional capacity to perform light exertional work with the following limitations: an option to alternate between sitting and standing at 15-minute intervals; only occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; no crawling; occasional stooping; avoidance of concentrated exposure to chemicals and other irritants; no exposure to hazardous machinery or unprotected heights; no driving or operation of motor vehicles as part of job duties; no work involving strict production quotas or strict time limits; no

public interaction; and only superficial interaction with co-workers.  (*PageID##* 119-20).
The VE testified that a person requiring those limitations would be able to perform her
past relevant work as a medical lab technician, as well as 6,000 other light exertional jobs
in the regional economy (such as office helper, mail clerk, or photo copy machine
operator).  At the sedentary exertional level, the VE identified 3,500 available positions
(such as lens inserter, frontal assembler, or weight tester).  (*PageID#* 120).  The VE
further testified that his testimony is consistent with the *Dictionary of Occupational Titles*
(DOT), and although the sit/stand option was not addressed in the DOT, he considered
published research.  (*Id.*).

When cross-examined by Plaintiff's counsel, the VE testified that if a person was
absent three times a month or was off task for a third of the day, the hypothetical
individual would not be able to maintain full-time employment.  (*PageID#* 121).

## C.    **Medical Opinions**

Plaintiff's family physician, Scott Shaw, M.D., completed numerous Basic
Medical forms for the Ohio Department of Job and Family Services.  In August 2009, Dr.
Shaw opined that Plaintiff could stand/walk for 1 hour in an 8-hour workday, up to ½
hour without interruption; could sit for 1 hour in an 8-hour workday, up to ½ hour without
interruption; and could lift/carry 6-10 pounds frequently.  (*PageID#* 324).  Dr. Shaw
opined that Plaintiff's ability to push/pull, bend, reach, handle, and perform repetitive foot
movements are extremely limited, but her ability to see, hear, and speak is not

significantly limited.  (*Id.*).  He noted that her low back pain at L5-S1, asthma, hyperlipidemia, and hypothyroidism are what led him to his findings.  (*PageID#* 323).

W. Jerry McCloud, M.D., reviewed the file on behalf of the Ohio Bureau of Disability Determination on November 15, 2009.  (*PageID##* 535-42).  Dr. McCloud concluded that Plaintiff could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently.  (*PageID#* 536).  Dr. McCloud opined that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (*Id.*).  Plaintiff could never climb ladders, ropes, or scaffolds.  (*PageID#* 537).  Dr. McCloud also found that Plaintiff was to avoid hazards such as machinery, heights, and commercial driving because she is prescribed narcotics.  (*PageID#* 539).  Dr. McCloud concluded that Plaintiff's statements were only partially credible, noting that the evidence shows that Plaintiff had lumbar surgery in April 2008 and there were no surgical complications.  However, he noted she continues to report chronic back pain with left leg pain and is in pain management.  On examination, she has a normal gait and no evidence of muscle weakness.  Dr. McCloud concluded there was no evidence to limit walking or standing to only 15 minutes.  (*PageID#* 540).  Another state agency physician, Leigh Thomas, M.D., affirmed Dr. McCloud's assessment on March 29, 2010.  (*PageID#* 579). Dr. Thomas gave Dr. Shaw's opinion no weight finding that "[Plaintiff's] [activities of daily living] show significantly greater ability to function."  (*Id.*).

On November 30, 2009, Plaintiff's treating pain specialist, Bruce Kay, M.D., opined in a treatment note that he felt that Plaintiff "is disabled based on the fact that she

has had back surgery, has chronic scar tissue, epidural fibrosis around the nerve root based on an MRI scan and has obesity.  That combination makes her disabled from gainful employment."  (*PageID#* 687).

In April 2010, Dr. Shaw noted Plaintiff's health status as "good/stable" with treatment.  (*PageID#* 580).  He opined that Plaintiff could stand for 1 hour out of 8 and uninterrupted for a ½ hour; and sit for 1 hour out of 8 and uninterrupted for a ½ hour. She could frequently lift/carry up to 5 pounds and occasionally lift/carry up to 10 pounds. She was extremely limited in her ability to push/pull, bend, reach, handle, and perform repetitive foot movements.  (*PageID#* 581).  Dr. Shaw concluded that Plaintiff was unemployable for 12 months or more.  (*Id.*).

In September 2010, Dr. Shaw completed a similar Basic Medical form except that he found that Plaintiff could frequently lift/carry up to 10 pounds.  (*PageID##* 582-83).

On December 29, 2010,  Dr. Shaw completed interrogatories.  Dr. Shaw concluded that based on Plaintiff's back pain she was unable to do the following: be prompt and regular in attendance; withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of her physical and mental impairments; complete a normal workday or workweek without interruption from psychologically and/or physically based symptoms; and perform at a consistent pace without unreasonable number and length of rest periods. (*PageID##* 715-17).  According to Dr. Shaw, Plaintiff's physical abilities are affected by her low back pain and decreased range of motion; she could lift/carry up to 10

pounds; stand/walk for 1 hour out of 8 and uninterrupted for a ½ hour; and sit for 1 hour out of 8 and uninterrupted for a ½ hour.  (*PageID#* 717).  Dr. Shaw also opined that Plaintiff was to never climb, balance, stoop, crouch, kneel, or crawl.  (*PageID#* 718).  Due to her asthma, Plaintiff was also found to be restricted from environments with dust and fumes. (*PageID##* 719-20).  Dr. Shaw concluded that Plaintiff could not perform even sedentary work.  (*PageID#* 721).

III.  **Administrative Review**

A.  **"Disability" Defined**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

B.  **ALJ Bowen's Decision**

8

ALJ Bowen resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations.  *See PageID## 70-71; see also* 20 C.F.R. § 404.1520(a)(4).  Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff had the following severe impairments: laminectomy syndrome; obesity; mood disorder; cannabis dependence in reported recent remission; and mild asthma.  (*PageID#* 71).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments.  (*PageID#* 76).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations: 1) lifting and carrying of 10 pounds frequently and lifting up to 20 pounds occasionally; 2) standing/walking about 6 hours and sitting about 6 hours out of a standard 8-hour workday; 3) the option to alternate between sitting and standing at 15-minute intervals; 4) occasional climbing of ramps or stairs; 5) no climbing of ladders, ropes, or scaffolds; 6) no crawling; 7) occasional stooping; 8) avoid concentrated exposure to chemicals and other irritants; 9) no exposure to hazardous machinery or unprotected heights; 10) no driving or operation of motor vehicles as part of job duties.  Due to her mental impairments, she is restricted from work involving strict production quotas or strict time limits; no public interaction; and only superficial interaction with co-workers. (*PageID#*

9

78).  The ALJ further found that Plaintiff is capable of performing her past relevant work as a laboratory technician.  (*PageID#* 82).

At Step 5, the ALJ concluded – considering Plaintiff's age, education, work experience, and residual functional capacity – there are other jobs that exist in significant numbers in the national economy that she also can perform.  (*Id.*).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI.  (*PageID#* 83).

## IV.  <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of

10

"more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    <u>Discussion</u>

### A.    <u>The Parties' Contentions</u>

Plaintiff contends the ALJ erred in rejecting the opinions of her treating physician, Dr. Shaw, and her treating pain specialist, Dr. Kay, and instead relying on the opinions of the non-examining State agency reviewers.  (Doc. #8, *PageID##* 817-84; Doc. #16, *PageID##* 878-82).  Plaintiff also contends that the ALJ erred in finding that she was not credible in her statements of disabling pain.  (*Id.*, *PageID##* 824-25).

The Commissioner contends that the ALJ did not err when rejecting the opinions of Dr. Shaw and Dr. Kay, but properly evaluated their opinions as required by the Regulations.  (Doc. # 15, *PageID##* 862-72).

### B.     <u>Treating Source Opinions</u>

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582 F.3d at 406*, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In *Wilson*, 378 F.3d at 546, the Sixth Circuit noted that a treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include,

12

*inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record.

### C.    Analysis

In considering Dr. Shaw's opinions, ALJ Bowen reviewed the record and medical evidence before her and concluded that his opinions were entitled to "little weight." Specifically, the ALJ stated:

> The undersigned finds the reports of Dr. Shaw to be entitled to little weight as they rely perhaps, too much on the subjective allegations of the claimant. These reports are filled out for continued access to a county benefits program, which allows her to see a doctor. The MRI is suggestive of back problems after surgery however; there has been no physical or aqua therapy. There have only been three epidural injections since April 2008 despite Dr. Kay's positive assessment of their effectiveness. There has been no suggestion of further surgery to remove the scar tissue, in fact, Dr. Kay strongly stated she was not a surgical candidate. The claimant has not been medication compliant with her prescribed medications and she takes illegal medications. Further, if her pain was as chronic as Dr. Shaw and the claimant reports one wonders why it has taken sixteen months to obtain a referral to another pain management doctor. The record as a whole does not support the level of limitation suggested by Dr. Shaw. Also of note and despite Dr. Shaw's dire predictions of her medical condition, the claimant raises two children by herself, ages 5 and 12. The claimant clothes and feeds the children. She cooks for them. She assists the five year old with bathing. She is able to take public transportation. The claimant washes dishes. The claimant's activities of daily living suggest a far more active claimant than the picture Dr. Shaw paints. Accordingly, his opinion is given little weight.

(*PageID## 73-74*).

Plaintiff alleges disability due to her chronic medical history involving low back pain.  (*PageID# 241*).  The medical evidence reveals that Plaintiff was involved in a motor vehicle accident in March 2006, which resulted in cervical spine and lumbar spine

13

pain. (*PageID#* 294). Objective tests of record include a MRI from March 2008 which showed a bulging disc with annular tear at L4-5 affecting the nerve root (*PageID#* 490) and a MRI of the lumbar spine taken in April 2008 which revealed lumbar spondylitic changes most prominent at the L4-5 and L5-S1 levels. (*PageID##* 309-10). Plaintiff underwent an endoscopic left L5-S1 discectomy on April 30, 2008. (*PageID##* 313-20). Subsequent treatment with Dr. Shaw showed left leg radiculopathy and a reduced range of motion of her spine. (*See PageID##* 492, 494-95, 498-99, 503, 505-08, 511). At the administrative hearing, Plaintiff testified that she is unable to work due to back pain, severe depression, and irritability. (*PageID#* 104). Dr. Shaw's four opinions stating that Plaintiff is disabled are consistent with each other, the treatment notes from his practice, Dr. Kay's treatment notes, and the record as a whole. These findings support Dr. Shaw's opinion.

The record makes clear that Dr. Shaw was responsible for coordinating Plaintiff's care with the other specialists of record, and that he was well-aware of Plaintiff's diagnoses and treatments provided by her other health care providers. *See* 20 C.F.R. § 404.1527(c)(2); *Blakley*, 582 F.3d at 406. Based on his long-term treatment relationship with Plaintiff, Dr. Shaw reasonably opined that Plaintiff was not able to perform the exertional requirements of even sedentary work on a sustained basis. (*PageID##* 323-24, 580-81, 582-83, 715-17). These opinions were wrongly accorded minimal or no deference by the ALJ. Dr. Shaw's opinions are supported by objective medical data and consistent with the other evidence of record.

14

Moreover, the Court finds that the ALJ erred in her failure to appropriately weigh and give good reasons for not giving controlling weight to the findings of Dr. Shaw.  If the ALJ finds that the opinion of a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence ... of record," the ALJ should give the opinion controlling weight.  20 C.F.R. § 404.1527(c)(2).

While the regulations allow ALJs – under some circumstances and after a properly balanced analysis – to give more weight to the opinions of consultative doctors than treating physicians, "the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight.  Indeed, they call for just the opposite."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013).

Plaintiff's primary argument involves the ALJ's treatment of treating pain specialist Dr. Kay's opinion.  As to Dr. Kay's opinion, the ALJ found:

> In November 2009, Dr. Kay included in an office note that he felt the claimant was disabled based on her having surgery, having chronic scar tissue, and having epidural fibrosis around the nerve root.  He also noted her obesity.  The undersigned finds this opinion should be given little weight.  Dr. Kay's own office notes reflect that the claimant was doing well on medications reporting that they controlled her symptoms.  He felt the epidural injections went well.  Dr. Kay also recommended against further back surgery noting the claimant's symptoms were nonphysiologic in nature.  The claimant's continued use of illegal drugs also complicated the assessment of the claimant's post-surgical recovery and treatment.  In May 2010, approximately five weeks after discharge the claimant presented at the emergency room for back pain since she was no longer seeing Dr. Kay.  The examination revealed lumbar tenderness with reduced range of motion.

15

However, she also had normal motor function, normal sensory function, and no focal deficits. Her extremities revealed no edema and normal range of motion.  The claimant told the staff that her pain was normally in her back only.  Staff noted no weakness but did state the claimant was walking crouched over.  She was diagnosed with chronic back pain, given medication, and discharged.  Of course the issue of disability is reserved to the Commissioner and statements that a claimant is disabled or unable to work are not medical source opinions entitled to any special significance.  In addition, the record – including Dr. Kay's own notes – does not support the conclusion that the claimant is disabled.  Accordingly, as Dr. Kay has not seen the claimant since March 2010, his opinion attesting to her disability is given no weight.

(*PageID##* 72-73).


Dr. Kay's opinion, however, is supported by objective medical findings and is consistent with the remainder of the record.  For example, treatment notes from his practice reveal that even though Plaintiff reported that she was doing good and straight leg raising test was negative on September 3, 2008, she had an antalgic walk and edema of the distal fibula by October 2, 2008.  (*PageID##* 361, 368). A MRI from October 6, 2008 demonstrated "post surgical changes at the L5-S1 level, with postsurgical fibrosis in the left side of the central spinal canal, which appears to encroach upon the left S1 nerve root."  (*PageID#* 429).  On May 28, 2009, Dr. Kay noted that Plaintiff's pain was controlled with medication. However, he also reported that "an MRI clearly shows that there is scar tissue around the S1 nerve root which is causing the numbness [of her left leg]."  (*PageID#* 341).  On June 25, 2009, the physician assistant in Dr. Kay's office noted that Plaintiff was "having quite a bit of pain and burning sensation also with

numbness over the left lower extremity at the calf. Her MRI does show that she has a lot of epidural fibrosis over the L5-S1 nerve root and this is definitely the cause of that." (*PageID#* 339). On July 28, 2009, Plaintiff called with complaints of cramping in her left leg. (*PageID#* 333). In August 2009, the physician's assistant noted that Plaintiff "continued to complain of low back pain with left lower extremity pain secondary to post laminectomy syndrome." (*PageID#* 326). On November 30, 2009, in the same treatment note where he opines that Plaintiff is disabled, Dr. Kay reported that she did well on the epidural injections, but also that she might "be eventually a candidate for spinal cord stimulator." (*PageID#* 687). Dr. Kay's opinion is also supported by other evidence and treating source findings (i.e., Dr. Shaw's opinion).

Dr. Kay's opinion is also consistent with the remainder of the evidence, particularly Plaintiff's treatment history. Plaintiff received treatment for her low back and left leg pain since at least March 2006. (*PageID#* 294). Plaintiff underwent an endoscopic left L5-S1 discectomy on April 30, 2008. (*PageID##* 313-20). Further, starting in April 2008, Plaintiff regularly went to the Dayton Outpatient Center Pain Clinic and American Health and Pain Management Dayton Pain Center for relief. Treatments included medication management and lumbar epidural blocks. *See generally PageID##* 326-454, 544-77, 681-706.

The ALJ replaced a well-supported treating specialist's opinion with her own medical theory. The ALJ may have expertise in some matters, but does not supplant the medical expert. *Hall v. Celebreeze,* 314 F.2d 686, 690 (6th Cir. 1963). "[A]n ALJ must

not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel,* 227 F.2d 863, 870 (7th Cir. 2000); *see Rosa v. Callahan,* 168 F.3d 72, 78-79 (2nd Cir. 1999)("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.")

In determining Plaintiff's RFC, the ALJ relied on the state agency opinions. In doing so, the ALJ erred by not evaluating the opinions of Dr. McCloud and Dr. Thomas under the required legal criteria. *See PageID##* 74, 79-80.  The ALJ thus failed to comply with the Commissioner's Regulations requiring the ALJ to evaluate the opinions of non-treating medical experts under the same regulatory factors – supportability, consistency, specialization, etc. – that apply to treating medical source opinions. *See* Soc. Soc. Ruling 96-6p, 1996 WL 374180 at *2-*3 (interpreting, in part, 20 C.F.R. §404.1527(e)).  Plaintiff's treating sources are in a better position to opine on the practical impact, in terms of functional limitations, from Plaintiff's clinical symptoms and examination results.  Dr. McCloud based his RFC findings on nothing more than the paper file and offers no explanation for the exertional limitations he establishes beyond a mere recitation of Plaintiff's impairments.  (*PageID##* 536-37).  Nothing else in Dr. Thomas' RFC report indicates how he reaches the conclusion that Dr. Shaw's opinion should not be given any weight other than by considering Plaintiff's daily activities. (*PageID#* 579).

For the treating physician rule to have the meaning and practical force prescribed in the regulations, the opinion of a treating source may not be afforded "little" or "no

weight" simply because it conflicts with the opinions of nontreating and nonexamining doctors. *Gayheart,* 710 F.3d at 377.

Accordingly, the Court finds the ALJ did not apply the proper legal standards to the opinions of Dr. Shaw and Dr. Kay.[4]

## VI.  Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See id.* However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to problems discussed *supra*.

_____

[4] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions and evaluation is unwarranted at this time.

19

On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for DIB and SSI should be granted.

### IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Adale Wilkins was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be **TERMINATED** on the docket of this Court.

January 3, 2014

       s/Sharon L. Ovington
        Sharon L. Ovington
     Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).